# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| GEORGIA FERRELL, as Administratrix of the Estate of JONATHAN A.P. FERRELL,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF CHARLOTTE; COUNTY OF MECKLENBURG; RANDALL W. KERRICK, both individually and in his official capacity as a law enforcement officer with the Charlotte-Mecklenburg Police Department; and RODNEY MONROE, in his official capacity as a law enforcement officer with the Charlotte-Mecklenburg Police Department,<br><br>    Defendants. | CIVIL ACTION NO.: 3:14-cv-47<br><br>**ORDER** |

**THIS MATTER** is before the Court on Defendant Mecklenburg County's Motion to Dismiss (Doc. No. 24), Plaintiff's Response in Opposition (Doc. No. 26), Defendant's Reply (Doc. No. 29), Plaintiff's Supplemental Response in Opposition (Doc. No. 34), and Defendant's Supplemental Reply (Doc. No. 36). The Court conducted a status conference in this case on October 6, 2014. At that conference, the Court ordered discovery on the issues presented in the County's Motion. Plaintiff thereafter filed a supplemental response, which includes transcript excerpts from a Rule 30(b)(6) deposition of the County, as well as other documents in support of her opposition to the County's Motion. On February 10, the Court converted the County's Motion to one for summary judgment and granted the County leave to file its own supplemental response. (*See* Doc. No. 35). That response having been filed, this matter is now ripe for consideration.

# I. BACKGROUND

This lawsuit arises from the shooting death of Jonathan A.P. Ferrell on September 14, 2013. The Complaint alleges that, on that date, Jonathan was unlawfully shot and killed by Defendant Randall Kerrick, who was a patrol officer with the Charlotte-Mecklenburg Police Department ("CMPD"). The incident occurred in an unincorporated area of Mecklenburg County.

The Complaint asserts claims under 42 U.S.C. § 1983 for violation of civil rights and deliberate indifference, as well as state law claims for wrongful death based on negligence/gross negligence, and assault and battery against all Defendants. (*See* Doc. No. 1). It further alleges that Mecklenburg County is jointly and severally liable with the other Defendants for damages, including punitive damages, based on agency, the doctrine of *respondeat superior*, and breach of duties owed to Plaintiff.

The County's Motion, filed on August 6, 2014, asserts that there is no basis for its liability under § 1983 because the County has never been involved in the operation or management of the CMPD, and in fact has not been involved in the management or control of any police function or department since 1993. It likewise asserts that there is no basis for its liability under the doctrines of agency or *respondeat superior* because the Chief and officers of the CMPD were not employees or agents of the County. Attached to its Motion and offered in support are: (1) the affidavit of Dena R. Diorio, Mecklenburg County Manager; (2) the 1993 Agreement for Consolidation of the Charlotte and Mecklenburg County Police Departments; and (3) the 1996 Agreement for Continued Consolidation of the Charlotte and Mecklenburg County Police Departments. (Doc. No. 24-1).

Contemporaneous with her Response in Opposition, Plaintiff filed a motion asking the Court to exclude the exhibits or, in the alternative, convert the County's Motion to one for

summary judgment, as the exhibits are matters outside the pleadings that should not be considered on a motion to dismiss. At a status conference held on October 6, 2014, the Court ordered that Plaintiff would be allowed to conduct discovery on the issues presented in the County's Motion. Thereafter, Plaintiff served the City and the County with requests for production and noticed a deposition pursuant to Rule 30(b)(6). (Doc. No. 36 at 2). The County served its responses to the requests for production and designated former County Manager Harry Jones as the deponent, which deposition took place on January 14, 2015. (*Id.*) On February 6, 2015, Plaintiff filed a supplemental response containing excerpts of the deposition and various other exhibits (Doc. No. 34). After the Court converted Defendant's Motion to one for summary judgment (*see* Doc. No. 35), Defendant filed its reply to the supplemental response on March 2, 2015 (Doc. No. 36).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986). The mere existence of a scintilla of evidence in support of the non-movant's position is not sufficient to establish a genuine dispute. *Id.* at 252. A material fact affects the outcome of the suit under the applicable substantive law. *See id.* at 248. When determining whether a dispute is genuine or a fact is material, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

# III. DISCUSSION

In her supplemental response, Plaintiff notes the testimony of County Manager Dena R. Diorio that "[t]he CMPD has been operated and administered by the City of Charlotte since 1993 without any oversight or control by the County." (*See* Doc. No. 24-1 at 2-3). Plaintiff then contends that (1) several exhibits now in the record contradict Diorio's assertion; and (2) if this assertion is true, it constitutes deliberate indifference on the part of the County with regard to the constitutional rights of its citizens. (*See* Doc. No. 34 at 30-31). For the reasons stated below, the Court finds these arguments unavailing.

## A. Allegations in the Complaint

The Complaint alleges repeatedly that the County either continues to operate or is otherwise involved, directly or indirectly, in the operations of the CMPD. Relevant excerpts of these allegations are included here for reference:

> At all times relevant to this action, Defendant County acted through its managers and policy makers, including the Chief of Police and other employees of the [CMPD]; and the acts, edicts, and practices of said persons represent the official policies of Defendant County. (Compl. ¶ 6).

> In the exercise of statutory powers granted by the North Carolina Legislature, Defendant City, along with Defendant Mecklenburg County, established and created and continue to operate the [CMPD]. (Compl. ¶ 19).

> [T]he operating budget of CMPD is funded jointly by Defendants City and County. Both Defendants City and County have the actual right and legal authority to direct and control CMPD, its policies and procedures, officers and employees. (Compl. ¶ 23).

> Defendant Kerrick was employed by the Defendant City and/or Defendant County and/or the [CMPD] . . . and was acting at all relevant times as an agent of Defendant City and/or Defendant County within the course and scope of his duties . . . and under the color of laws, statutes, regulations, customs, practices and usage of the City of Charlotte, County of Mecklenburg and the State of North Carolina. (Compl. ¶ 25).

Defendant City, Defendant County and Defendant Monroe and CMPD had the right and/or power to direct and control the manner in which its/their employees and/or agents executed their official duties. (Compl. ¶ 27).

The grossly negligent acts, omissions and liability of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to [principles] of non-delegable duty, corporate liability, actual authority, apparent authority, actual agency, ostensible agency and/or *respondeat superior* and the acts and/or omissions of the above-named Defendants were a direct and proximate cause of the injuries, damages and losses sustained by the Plaintiff. (Compl. ¶ 28).

Defendant County owed a duty to Jonathan A.P. Ferrell, and to the general public, to ensure that the CMPD, its agents and employees would perform their duties in such a way as to avoid placing Jonathan, and other members of the public, in unreasonable danger of injury or death. Furthermore, Defendant County owed a duty to ensure that Jonathan A.P. Ferrell, and other members of the public, would be free from unreasonable searches and seizures and excessive force at the hands of the CMPD. (Compl. ¶ 92).

The negligence of Defendant Kerrick is imputed by law to Defendant City and Defendant County by reason of Defendant Kerrick's agency relationship with, and employment by, Defendant City and/or Defendant County at the time and place that the incident occurred, under the doctrine of *respondeat superior*. (Compl. ¶ 107).

Defendants City, County and Monroe failed to properly hire, train, instruct, monitor, supervise, investigate, and discipline officers of the CMPD with deliberate indifference to Jonathan A.P. Ferrell's constitutional rights . . . . (Compl. ¶ 131).

The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct by Defendants City, County and Monroe, were a moving force and/or a proximate cause of the deprivations of Jonathan A.P. Ferrell's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. § 1983 . . . ." (Compl. ¶ 132).

**B. State Law Claims**

**1. Vicarious Liability**

"A principal is liable for the wrongful acts of its agent under the doctrine of respondeat superior when the agent's act is (1) expressly authorized by the principal; (2) committed within

the scope of the agent's employment and in furtherance of the principal's business; or (3) ratified by the principal." *Gammons v. N.C. Dep't of Human Resources*, 459 S.E.2d 295, 296 (N.C. Ct. App. 1995) (citing *B.B. Walker Co. v. Burns Int'l Sec. Servs.*, 424 S.E.2d 172 (N.C. Ct. App. 1993), *disc. rev. denied*, 429 S.E.2d 552 (N.C. 1993)). "A principal is not vicariously liable for the wrongful acts of the agent who is not subject to the direction and control of the principal with respect to the details of the work and is subordinate only in accomplishing a result desired by the principal." *Id.* at 296 (citing *Vaughn v. Dep't of Human Resources*, 252 S.E.2d 792 (1979)). Ultimately, "[a] principal's vicarious liability for the torts of his agent depends on the degree of control retained by the principal over the details of the work as it is being performed." *Id.* (quoting *Vaughn*, 252 S.E.2d at 795)).

In the context of agency, North Carolina courts have held that "the vital test in determining whether an agency relationship exists is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." *Diggs v. Novant Health, Inc.*, 628 S.E.2d 851, 857 (N.C. 2006) (quoting *Hylton v. Koontz*, 532 S.E.2d 252, 257 (N.C. Ct. App. 2000)). Those courts have made it clear that "the principal must have the right to control *both the means and the details of the process* by which the agent is to accomplish his task in order for an agency relationship to exist." *Id.* (quoting *Wyatt v. Walt Disney Co.*, 565 S.E.2d 705, 710 (N.C. Ct. App. 2002) (additional quotations and citations omitted)).

A careful review of Plaintiff's Complaint reveals that his state law claims, as they are asserted against Defendant County, are largely contingent upon whether the County had an agency relationship with the officers in question, or whether the County may be held liable for the acts of these officers under the doctrine of *respondeat superior*. This very question, however, was recently addressed in this district by Hon. Frank D. Whitney in *Newton v. City of Charlotte*, No. 3:14-cv-

672-FDW-DSC, 2015 WL 346949 (W.D.N.C. Jan. 26, 2015). In that case, Judge Whitney considered a motion pursuant to Rule 12(b)(6) to dismiss state law claims asserted against Mecklenburg County for wrongful death based on the negligence/gross negligence of the CMPD, as well as claims under 42 U.S.C. § 1983 for violation of civil rights and deliberate indifference—nearly the same claims presented in this case. The County's Motion in *Newton*, which is very similar to the one presented here, also attached the same three documents in support. Judge Whitney excluded the Affidavit of Dena Diorio as inappropriate for consideration under Rule 12(b)(6); however, he took judicial notice of the 1993 and 1996 consolidation agreements as matters of public record. *See id.* at *3. Having considered those agreements and the applicable law, Judge Whitney found that:

> Plaintiff's cause of action for wrongful death based on the doctrines of agency, vicarious liability and respondeat superior hinges on his claim that the CMPD officers at issue in the case were acting within the scope of their employment and/or agency with the CMPD at the time relevant to this action *and* on his allegations that the County had the actual and/or apparent right and legal authority to direct and control the CMPD, its policies and procedures, and officers and employees. However, as expressly stated in the agreement which initially consolidated the City of Charlotte and Mecklenburg County Police Departments into the CMPD, as of October 1, 1993—and as continued under the 1996 Agreement—the employment of all County Police Department employees terminated and these employees became City employees. [citing the Agreements]. Moreover, the Agreements expressly provide that all functions—except for building security, intake center/arrest processing, radio services (non-police) and dispatch and telecommunications—are consolidated under the City of Charlotte. [citing Agreements]. Accordingly, it is clear that the CMPD officers at issue in this case were the employees of the City of Charlotte, and not of Defendant County, during the relevant time period. Furthermore, it is clear that the control and supervision of the CMPD officers rested with the City of Charlotte, and not with Defendant County. As such, the Complaint fails to state a claim for relief based on the doctrines of agency, vicarious liability and respondeat superior.

*Id.* at *4 (citations omitted).

While the Motion before this Court is one for summary judgment rather than a motion to dismiss under Rule 12(b)(6), Judge Whitney's conclusions are directly applicable to this case. This

7

Court, after its own careful reading of these agreements, agrees with those conclusions and adopts that reasoning here. Furthermore, the discovery ordered in this case only reinforces Judge Whitney's conclusions in *Newton*. The testimony of former County Manager Harry Jones confirms unequivocally what is contained in the consolidation agreements:

> Q. Is it Mecklenburg County's position that it has absolutely no policies whatsoever with regard to the supervision of law enforcement agencies that have jurisdiction over its citizens?
> A. Since 1993 when Mecklenburg County consolidated its rural police department with the City of Charlotte, it ceased to exercise control and authority over the police function within Mecklenburg County. (Doc. No. 36-1 at 5-6).
>
> Q. But it's your testimony that their elected officials have no direct right to control any aspect of the performance of the police department, correct?
> A. The County has a contractual responsibility or a contractual relationship with the City of Charlotte for the provision of police services and law enforcement in the unincorporated area. (*Id.* at 23).
>
> Q. It is the County's testimony in this case that prior to September 13, 2013 it exercised no control over the Charlotte-Mecklenburg Police Department, is that correct?
> A. The County did not exercise authority or control over the Charlotte-Mecklenburg Police Department, correct.
> Q. And that it made no attempt to exercise any control over the Charlotte-Mecklenburg Police Department, correct?
> A. The responsibility for the operation of the Charlotte-Mecklenburg Police Department was vested in the police chief and the City of Charlotte through the contractual commitment that we had with them, yes sir. (*Id.* at 39-40).

Plaintiff calls the Court's attention to several documents which she believes contradict these assertions. (*See* Doc. No. 34 at 30-33). The first is a report dated July 30, 1991 which appears to identify several strategies the board of county commissioners was considering regarding "joint decisionmaking" for the proposed CMPD, including a "Joint Standing Committee," a "Planning Commission Model," and "Collective Body Voting." (*See* Doc. No. 34-4). However, this document was produced long before the actual consolidation of the two departments took place. As Mr. Jones explained, "there are a number of things that were discussed that did not get into the

consolidated agreement." (Doc. No. 36-1 at 20). The remainder of the documents reference a measure that was, in fact, adopted, which was a "Joint Police Advisory Committee." This Committee, as explained in the 1993 Agreement, was established "to provide representation for citizens in the unincorporated areas regarding Police services from the [CMPD]." (Doc. No. 24-1 at 13). The Committee was to consist of representatives from both the City and the County, and would "advise the County Commission, City Council and City Manager on policy issues relating to police services to residents outside the City," as well as "review service levels for citizens in the unincorporated areas . . . and recommend any changes they feel appropriate in service delivery." (*Id.* at 14). Plaintiff contends that the existence of this committee demonstrates that the CMPD is, in fact, subject to the direction and control of the County, and that this constitutes a genuine issue of material fact on the matter. (*See* Doc. No. 34 at 30-31).

It appears from the evidence in the record, however, that this committee no longer exists. The provision governing the establishment and functions of the committee is noticeably absent from the 1996 Agreement, (*see* Doc. No. 24-1 at 18-26); Mr. Jones explained that this was not by accident:

> Q. Is it the testimony of the County that that committee no longer exists or functions, first?
> A. Yes.
> Q. And where is the legal authority for the abolishment of that committee?
> A. The legal authority for the abolishment of that committee, in my estimation, is embodied in the current agreement that exists between the City of Charlotte and Mecklenburg County. The original agreement, as I recall, made reference to—the October 1st, 1993 agreement, I believe, made reference to that committee. Subsequent amendments to the agreement excluded any provision regarding the committee.

(Doc. No. 36-1 at 24). Thus, even assuming that this committee evidenced some level of County direction and control over the CMPD,[1] the evidence shows that no such measures are still in place.

---

[1] Based on the evidence in the record, however, even this appears doubtful. (*See, e.g.*, Doc. No. 36-1 at 33 ("Q. So

As a result, the Court is persuaded that "[t]he County does not operate the CMPD and is not involved in its management, control or oversight," (*see* Affidavit of Dena Diorio, Doc. No. 24-1 at 3), and that there is no genuine issue of material fact on this point. To the extent Plaintiff attempts to hold the County liable under theories of agency, *respondeat superior*, or other theories of vicarious liability, the Court finds that she cannot.

### 2. Other Theories

Plaintiff also presents the argument that "certain government functions are so essential to public health and welfare that they are non-delegable duties," and that the County should not be permitted to delegate away its liability for police services. (*See* Doc. No. 26 at 7). In support, she cites *Medley v. North Carolina Department of Correction*, 412 S.E.2d 654 (N.C. 1992), which provided that:

> A nondelegable duty may arise from circumstances recognized at common law and statute, and in "situations wherein the Law views a person's duty as so important and so peremptory that it will be treated as nondelegable. Defendants who are under such a duty '. . . cannot, by employing a contractor, get rid of their own duty to other people, whatever the duty may be.'"

*Id.* at 657 (quoting 5 FOWLER V. HARPER, ET AL., THE LAW OF TORTS § 26.11, at 83 (2d ed. 1986)) (citations omitted). In that case, the Supreme Court of North Carolina held that, even though the NC DOC had entered into a contract with a private party to provide medical services to prisoners, it could still be held liable for the negligence of its contractor. *See id.* The court explained, in the context of providing medical services to prisoners, "the duty is of such great importance that the state cannot avoid liability by contracting with someone else to perform it." *Id.* at 659.

---

there was a period of time . . . after consolidation where Mecklenburg County was involved in the monitoring of the police department and its activities through the county commission and this joint standing . . . committee? A. There was a period of time where, through this original document, there was an attempt to establish calls for services in the agreement. Now to say that there was monitoring that actually occurred, I would disagree with that.")).

But this case is easily distinguishable from *Medley*. The agreements creating CMPD are authorized by N.C. Gen. Stat. § 160A-461, which provides that units of local government may contract with each other "in order to execute any undertaking." Further, counties in North Carolina are specifically authorized by statute to "cooperate with the State and other local governments in law-enforcement matters." N.C. Gen. Stat. § 153A-212. Rather than contracting away its liability, then, the County has chosen to cooperate with another governmental entity, as authorized by statute, by placing responsibility for law enforcement in unincorporated areas of the County with the City of Charlotte. This Court agrees once more with Judge Whitney that "it is clear that Defendant County acted within its statutory authority in entering into the Agreements with the City of Charlotte to create the CMPD." *Newton*, 2015 WL 346949, at *5. Further, "where there is no dispute as to the validity of the Agreements, and where the Agreements make it clear that the City, not Defendant County, controlled the functions of the CMPD relevant to this case, Plaintiff has failed to establish a duty owed by Defendant County." *Id.* For these reasons, the Court finds that the County cannot be held liable in this case under a non-delegable duty theory.

To the extent Plaintiff attempts to assert a claim for negligence based on a theory that the County had some other duty to control or manage the CMPD, or a duty to manage and control another governmental entity, (*see* Compl. ¶ 92), the Court finds that she has failed to establish that such a duty exists. *See Clark v. Red Bird Cab Co.*, 442 S.E.2d 75 (N.C. 1994) ("In tort, there will be no liability unless the law imposes a duty."). For the foregoing reasons, the Court finds that there is no genuine issue of material fact with respect to Plaintiff's state law claims against Defendant County, and that the County is entitled to summary judgment on these claims.

## C. Claims under 42 U.S.C. § 1983

"Local governing bodies . . . can [] be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The Supreme Court, however, has made it clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, a plaintiff seeking to impose liability on a municipality for the torts of its employees under § 1983 must prove that some municipal "policy" or "custom" caused the deprivation of the plaintiff's rights. *See id.* at 694. Further, the plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. Of Comm'rs of Bryan City v. Brown*, 520 U.S. 397, 404 (1997).

Here, the Court finds that Plaintiff has not identified any such policy or custom because the County has shown that it does not operate the CMPD, nor does it exercise any sort of management or control over it. (*See* Diorio Aff.; *supra* Part III.B.). Further, the officers of the CMPD are employees of Defendant City, not Defendant County, and the authority to administer and set policies for the CMPD rests solely with the City of Charlotte. (*See id.*) In fact, it appears that the County's only involvement with the CMPD is to provide partial funding through a formula established in the 1996 Agreement. (*See* Doc. No. 24-1 at 3, 21, 26). This funding arrangement

alone cannot provide a basis for liability by the County. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 791-92 (1997) (rejecting argument that the funding of a sherriff's department by a county necessarily equates to control over the sherriff's department).

To the extent Plaintiff argues that the interlocal agreements themselves constitute a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County, she must still show that these agreements *caused* her injury. *See Bryan City*, 520 U.S. at 404. Plaintiff has provided no evidence that the agreement between the City and the County is the proximate cause of her damages, and the Court finds that there is no genuine issue of material fact on this point. As such, Plaintiff cannot maintain a valid § 1983 claim against the County.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that there is no genuine issue of material fact with regard to any of the claims asserted against Defendant County in the Complaint. Defendant Mecklenburg County is therefore entitled to summary judgment in its favor.

**IT IS THEREFORE ORDERED** that Defendant County's Motion (Doc. No. 24) is **GRANTED**. Defendant Mecklenburg County is hereby **DISMISSED** from this case.

**SO ORDERED.**

Signed: March 31, 2015

Graham C. Mullen
United States District Judge